UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENAYA MARTIN o/b/o N.D.M., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | NO. 20-cv-01209-RAL |
| Commissioner of Social Security,[1] | : | |

**RICHARD A. LLORET**  December 16, 2021
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Denaya Martin, on behalf of her minor daughter, N.D.M., seeks review of the denial of her claim for Social Security Supplemental Security Income ("SSI"). The ALJ found that N.D.M. suffers from four severe impairments, but found that she did not suffer from the functional equivalent of a listing condition. Upon review of the ALJ's decision, I find that the ALJ's denial of disability benefits is not supported by substantial evidence, as she insufficiently explains her resolution of evidence conflicting with her conclusion. However, I find that the case warrants a remand to the Commissioner for further consideration, rather than an award of benefits.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## PROCEDURAL HISTORY

On October 4, 2012, Ms. Martin filed a claim on behalf of N.D.M. for SSI, alleging a disability beginning on October 4, 2012. Administrative Record ("R.") 11, 999. Her claim was initially denied on February 22, 2013. R. 11.

On April 16, 2013, Ms. Martin requested an administrative hearing before an ALJ. *Id*. The ALJ held a hearing on March 13, 2014, and issued a decision denying Ms. Martin's claim on June 27, 2014. R. 11, 27. On August 19, 2014, Ms. Martin appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 6. The Appeals Council denied Ms. Martin's request for review on June 22, 2016. R. 1.

Following this denial, Ms. Martin appealed to the Eastern District of Pennsylvania on August 8, 2016. R. 1076. Accepting and adopting the report and recommendation of the U.S. Magistrate Judge, the U.S. District Judge granted Ms. Martin's request for review. R. 1073-74. Upon remand, another hearing was held on October 12, 2018, where Ms. Martin testified. R. 1028-45. Following the hearing, the ALJ issued another unfavorable opinion dated November 6, 2019.[2] R. 1019. This appeal follows.

The parties consented to the jurisdiction of a U.S. Magistrate Judge (Doc. No. 3) and have briefed the appeal. Doc. No. 9 ("Pl. Br."), 10 ("Comm'r Br."), and 11 ("Pl. Reply").

---

[2] In cases where, as here, an ALJ makes a decision after remand from the federal district court, the decision is considered final (and thus again appealable to federal court) when no exceptions are filed, and the Appeals Council does not assume jurisdiction. *See* 20 C.F.R. § 404.984.

**FACTUAL BACKGROUND**

**A. The Claimant's Background**

N.D.M. was a preschooler on her disability onset date, a school-age child at the time of the ALJ's first decision, and an adolescent at present. R. 14, 1002; 20 C.F.R. § 416.926a(g)(2). On October 4, 2012, Ms. Martin applied for SSI on behalf of N.D.M., alleging disability based on attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). R. 169.

**B. The ALJ's Decision on Remand**

On November 6, 2019, the ALJ issued a decision finding that N.D.M. was not eligible for SSI because she has not been under a disability, as defined by the Social Security Act. R. 1000, 1019. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's three-step sequential evaluation to determine whether an individual under the age of 18 is disabled.[3]

At step one, the ALJ found that N.D.M., an adolescent under the regulations, has not been engaged in substantial gainful activity since October 14, 2012. R. 1002. At step two, the ALJ found that N.D.M. has the severe impairments of learning disabilities, developmental delay, ADHD, and ODD. *Id*.

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. When the claimant is under the age of eighteen, the ALJ must assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; and (3) has an impairment or combination of impairments that meet, medically equal, or functionally equal the criteria listed in the Social Security regulations mandating a finding of disability. *See* 20 C.F.R. § 416.924(a)–(d).

At step three, the ALJ compared N.D.M.'s impediments to those contained in the Social Security Listing of Impairments ("listing").[4] The ALJ found that N.D.M.'s impairments do not meet, medically equal, or functionally equal the severity of a listing. R. 1002-19. In the domain of acquiring and using information, the ALJ found that N.D.M. has less than marked limitation. R. 1011. Similarly, the ALJ found that N.D.M.'s limitation in attending and completing tasks is less than marked. R. 1012-13. The ALJ did find that N.D.M. has a marked limitation in interacting and relating with others. R. 1014-15. However, in the domains of moving about and manipulating objects, caring for herself, and health and physical well-being, the ALJ found no limitation. R. 1016-19.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)

---

[4] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a minor's severe impairment or combination of impairments meet, medically equal, or functionally equal the criteria of a listing, that minor is determined to be disabled. 20 C.F.R. § 416.924(d).

(reviewing court must defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). An ALJ must also address all pertinent evidence on the record. *See id*. at 121-22. When dealing with conflicting evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id*. at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)). A reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119-20; *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett*").

## DISCUSSION

### A. Statutory and Regulatory Scheme

In evaluating the plaintiff's claim for benefits, the ALJ undertook a three-part analysis required by regulation. R. 1000-19. First, the ALJ determined that the

5

claimant was not engaged in work which can be considered "substantial gainful activity." R. 1002; 20 CFR § 416.924(b). Next, the ALJ determined that the claimant's impairment or combination of impairments was "severe." R. 1002; 20 CFR § 416.924(c). There is no dispute over these findings.

For a finding of disability, the third part of the analysis requires that the claimant's impairment "meet, medically equal, or functionally equal in severity a listed impairment" as set forth in 20 CFR Subpart 404, Subpart P, Appendix 1. 20 CFR § 416.924(d). R. 1000. The ALJ found that N.D.M. did not meet or medically equal a listing criterion, R. 1002-03, and then turned to the question of whether N.D.M.'s impairment can be found to be "functionally equivalent" to a listed impairment because it caused "marked limitations in two domains of functioning or an extreme limitation in one domain," R. 1001; 20 CFR § 416.926a(d). A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(2)(i). An "extreme" limitation is one where a child's test scores are three standard deviations or more below the norm, or where it "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(3)(i).

The functional domains considered by the ALJ were: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. R. 1001; 20 CFR § 416.926a.

**B. The Parties' Arguments**

Since the ALJ found that N.D.M. has a marked limitation in interacting and relating with others, the plaintiff focuses on two functional domains: 1) acquiring and

6

using information and 2) attending and completing tasks. Ms. Martin argues that the ALJ's findings that N.D.M. has less than marked limitations in the domains of attending and completing tasks and acquiring and using information are not supported by substantial evidence, as she failed to resolve evidence contradicting her decision; erred in granting no weight to Ms. Martin or N.D.M.'s teachers' statements, observations, and opinions; erroneously relied on one of the non-examining medical experts, Dr. Allison Podczerwinsky; and failed to properly contextualize N.D.M.'s improvements. Doc. No. 9, at 7-17. Ms. Martin also asserts that I should direct an award of benefits in this case because there has been excessive delay in this litigation, the record is fully developed, and substantial evidence indicates that N.D.M. is disabled and entitled to benefits. *Id.* at 17-19.

The Commissioner responds that the ALJ's findings were all supported by substantial evidence, as she considered all the evidence on the record and properly weighed each piece of evidence in reaching her decisions. Doc. No. 10, at 5-13. Furthermore, the Commissioner asserts that an outright award of benefits is not warranted if Ms. Martin's request for review is granted, as she has not presented "overwhelming evidence of disability." *Id.* at 13-14 (internal citation omitted).

In reply, Ms. Martin contends that the ALJ relied too heavily on the idea that N.D.M.'s condition is improving without further inquiry into her degree of improvement and its broader context. Doc. No. 11, at 2-3. Ms. Martin also reasserts that Dr. Podczerwinsky's failure to consider her testimony and key documentary evidence renders her opinion flawed. *Id.* at 2.

I find that the ALJ erred in failing to address and resolve contradictory evidence contained in the record, failing to sufficiently explain her decision to grant no weight to

the evidence offered by Ms. Martin and N.D.M.'s teachers, and failing to consider the degree to which N.D.M.'s improvements occurred within a structured educational setting. Nevertheless, the ALJ's errors in this case warrant a remand, not a reversal with direction to the Commissioner to award benefits. Thus, I will remand the case for further consideration by the Commissioner.

### C. The ALJ erred by insufficiently explaining her resolution of conflicting non-medical evidence in the domain of acquiring and using information.

The ALJ found that while N.D.M. indeed has a limitation in the functional domain of acquiring and using information, the limitation is less than marked. R. 1011. Yet, N.D.M.'s record contains evidence which undermines this conclusion. The ALJ erroneously failed to address this evidence and resolve it in reaching her decision. *See Burnett*, 220 F.3d at 119-20; *Caruso*, 99 F. App'x at 379.

The ALJ erred in failing to give full consideration to N.D.M.'s individualized education plans ("IEP"). Under Social Security regulations, the ALJ must consider the information in a minor claimant's IEP when determining her level of functioning. 20 C.F.R. § 416.924a(b)(7)(iii). While the ALJ cited N.D.M.'s IEPs in her decision, *see* R. 1005-06, I am unable to determine the extent to which the ALJ considered pertinent information within N.D.M.'s IEPs in reaching her conclusions, *see* R. 1011. For instance, Social Security rulings hold out the inability to read, write, or do arithmetic at an appropriate grade level as a prime example of a limitation in a child's ability to acquire or use information. Social Security Ruling (SSR) 09-3p, Title XVI: Determining Childhood Disability—The Functional Equivalence Domain of "Acquiring & Using Information," 2009 WL 396025, at *6 (Feb. 17, 2009). N.D.M.'s fourth grade IEP states that her reading level is that of a second-grade student per one test, and that of a first-

grade student per another test. R. 1209. Her sixth-grade IEP states that her reading instructional level is that of a first-grade student. R. 1258, 1264. Neither of these issues are flagged in the ALJ's decision, despite their pertinence to determining N.D.M.'s ability to acquire or use information. SSR 09-3p requires that the ALJ "compare the child's functioning to the functioning of same-age children without impairments based on all the relevant evidence in the case record." 2009 WL 396025, at *3. That N.D.M. is reading at a first-grade level in the sixth grade is highly relevant to this assessment. On remand, the ALJ must address how this evidence factors into her analysis.

The ALJ also neglected test results indicating poor performance in various subject areas, as she did in her first decision in this case. *See* R. 1081-82. For instance, N.D.M.'s record shows that she earned below basic scores in both English Language Arts and Mathematics in her fourth grade Pennsylvania System of School Assessment exams. R. 1230. Social Security regulations identify taking achievement tests as a primary goal for school-age children in the functional domain of acquiring and using information. 20 C.F.R. § 416.926a(g)(2)(iv). Yet, the ALJ never discussed these achievement test scores in her decision. On remand, the ALJ must demonstrate that she gave full consideration to N.D.M.'s achievement test results.

The ALJ cited N.D.M.'s report cards as evidence that her limitations in her ability to acquire and use information are less than marked. *See* R. 1011. However, the ALJ did not address contradictory evidence from N.D.M.'s report cards. Most prominently, a review of the record shows that as a fifth-grade student, N.D.M.'s English grades declined during the course of the school year, from an A in her first trimester to a C- in her third trimester. R. 1219. She experienced similar declines in other classes. R. 1219-20. The ALJ never mentioned this noteworthy element of N.D.M.'s report cards in her

9

analysis of N.D.M.'s ability to acquire and use information, *see* R. 1011. She also did not raise this evidence when writing that N.D.M.'s third, fourth, and fifth grade report cards feature average or better grades and comments from her teachers indicate steady improvement. R. 1005. Nor did the ALJ mention the context of the grades: that N.D.M., as a sixth grader, was being instructed at a first-grade level in reading. R. 1258, 1264. That a sixth grader is making "good grades" at a first-grade instructional level, with significant special learning and emotional assistance,[5] is not evidence that the child has no learning limitations. It is powerful evidence of a marked limitation in acquiring and using information, evidence that cannot be ignored.[6] As this evidence is pertinent to this issue and undermines her conclusion, the ALJ must cite it and discuss her resolution of it. *See Burnett*, 220 F.3d at 121-22.

### D. The ALJ erred by insufficiently explaining her decision to grant no weight to the opinions of Ms. Martin and N.D.M.'s teachers.

The ALJ wrote that she gave some consideration but no weight to statements, observations, and opinions made by Ms. Martin and N.D.M.'s teachers. R. 1009. She explained that she gave these statements, observations, and opinions consideration because they are presumably the result of regular interactions and observations with N.D.M. *Id.* However, the ALJ never presented any reasoning as to why she gave no weight to these statements, observations, and opinions. *See id.* This is erroneous.

---

[5] Judge Perkin had flagged in his prior remand of this case that the ALJ had failed to adequately consider the emotional and learning supports provided to N.D.M. in her first decision on this matter. R. 1082.

[6] The record does not reveal how N.D.M.'s standardized reading test score converts to standard deviations from the mean, but it seems likely that a first grade reading level is the equivalent of two to three standard deviations from the mean for sixth-graders. That would call for a finding of "marked limitation" under the regulations, if it converts to two standard deviations, and "extreme limitation," if three standard deviations. 20 C.F.R. § 416.926a(e)(2)(iii), (3)(iii).

ALJs are required to weigh evidence from non-medical sources, and opinions by non-medical sources who see a claimant in their professional capacity (including teachers) may even be held to outweigh medical source opinions, based on factors including the nature and extent of the relationship and the consistency of the evidence with other record evidence. SSR 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *4-*6 (Aug. 9, 2006). In the context of addressing the functional equivalence domain of acquiring and using information, the regulations state that "[w]e also consider evidence about the child's ability to learn and think from medical and other non-medical sources." SSR 09-3p, 2009 WL 396025, at *3. The ALJ does not appear to apply these rules to the statements, observations, or opinions of Ms. Martin or N.D.M.'s teachers. By not applying these rules as part of her decision to grant no weight to these statements, observations, and opinions, the ALJ committed clear error. *See Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000) ("Social Security Rulings … are binding on all components of the Social Security Administration.") (internal quotation omitted).

Presumably, as the ALJ acknowledged, for a child diagnosed with ADHD and ODD, her parents and teachers would likely be the ones who could speak most readily to her day-to-day behavior. Beyond the failure to comply with the language of SSRs, I find it difficult to understand why the ALJ afforded no weight to this evidence. The ALJ

provided no explanation. On judicial review, I must be able to understand the ALJ's reasoning. That I cannot do on this record.[7]

### E. The ALJ erred by not evaluating the degree to which N.D.M.'s improvements occurred in structured educational settings.

Throughout her analysis, the ALJ emphasizes that N.D.M.'s impairments have improved overall, but especially in the functional equivalence domains of acquiring and using information and attending and completing tasks.[8] However, the ALJ insufficiently explains the context for these improvements, as Judge Perkin directed on first remand (R. 1083). This was erroneous and must be resolved on this remand.[9]

---

[7] Ms. Martin also argues in her brief that the ALJ erred by giving great weight to the findings of non-examining psychologist Dr. Allison Podczerwinsky. Doc. No. 9, at 10-12, 15-17. The ALJ gave a thorough explanation for why she gave this opinion great weight, disagreeing with the expert's conclusions in the functional domain of interacting and relating with others and finding that N.D.M. had a marked limitation in this domain. *See* R. 1009. Nevertheless, on remand, the ALJ must reconsider how Dr. Podczerwinsky's conclusions match with her own independent conclusions once she has reconsidered the record evidence as directed by this decision and by Social Security regulations and rulings. If she finds that Dr. Podczerwinsky's conclusions no longer match those supported by N.D.M.'s records in their entirety, she must reconsider her weighing of this evidence and whether substantial evidence support the weight she grants this opinion.

[8] The ALJ summarized N.D.M.'s condition as follows: "Overall, the record indicates that while the claimant has some residual symptoms related to her impairments, she has achieved significant improvement with routine and conservative treatment consisting of individual therapy, itinerant educational services, and medication with no reports of significant negative side effects or complications from treatment and no evidence that her remaining symptoms and functional difficulties have consistently risen to the level of severity required to justify a finding of disability at any time relevant to this decision." R. 1008.

[9] The ALJ also made a finding that N.D.M. "has achieved significant improvement with routine and conservative treatment." R. 1008. This conclusion is not supported by substantial evidence. It may be appropriate for a doctor or other qualified expert to form an opinion that one would expect to see a more aggressive treatment history for a medical issue. Such an opinion would be based upon the doctor's years of medical training and clinical experience, and it would enable her to come to some general rule-of-thumb about the relationship of aggressive treatment history and severity of disorder. Such an opinion is often offered by an examining or consulting physician and can form the basis of an ALJ's determination that the level of treatment is not commensurate with the limitations identified by the treating physician. But the ALJ is not free to "go it alone." It is not permissible for an ALJ to arrive at such a conclusion, absent substantial support in the medical evidence in the record before her. I find no support for this conclusion in the medical record, as the record merely tells of N.D.M.'s treatment without weighing whether the treatments are aggressive or conservative by nature.

"Under the Social Security Rulings, a child who 'needs a person, ... treatment, device, or structured, supportive setting to make his functioning possible or improve the functioning.... has a limitation, even if he is functioning well with the help or support.'" *Brown v. Colvin*, 193 F. Supp. 3d 460, 466 (E.D. Pa. 2016) (Kearney, J.) (quoting SSR 09-1p, Title XVI: Determining Childhood Disability under the Functional Equivalence Rule—The "Whole Child" Approach, 2009 WL 396031, at *6 (Feb. 17, 2009)). When analyzing a child's improvements, it is not enough to simply state that treatments are benefitting a child. An ALJ must "compare the child's functioning to same-age, unimpaired children, and consider the impact of structured or supportive settings on the child's ability to sustain adequate functioning." *Id.* (citing 20 C.F.R. § 416.924a(b)(3), (b)(5)). The ALJ failed to engage in this analysis here.

Evidence in this record suggests a discrepancy between N.D.M.'s behavior inside and outside her special education classes. For instance, in her fourth-grade IEP, N.D.M.'s special education and resource room teacher's observations were more complementary of her participation in the classroom and learning process than her regular education teacher's observations. R. 1210-11. Furthermore, N.D.M.'s fourth-grade IEP reconsideration report notes that she "does not independently complete assigned school work, gets distracted, [and] doesn't pay attention to teachers or work." R. 1209. This evidence suggests that N.D.M.'s improvement might only be occurring when she is supported in a structured setting. The ALJ does not address these aspects of N.D.M.'s IEP and must clearly factor this information into her analysis per Social Security regulations.

Additionally, the ALJ cited N.D.M.'s participation in the general education curriculum for more than eighty percent of the school day and her learning support as

13

being itinerant as evidence of improvement, without any further context. R. 1013. Based on this information alone, I am unable to determine whether this is evidence of N.D.M.'s improvement on its own, or indeed whether all of the improvement cited in the ALJ's decision only occurred in the special education context. The ALJ must follow the rulings and regulations of the Social Security Administration in weighing and considering evidence in any given case. *See Sykes*, 228 F.3d at 271. Here, I find that she did not follow the rulings and regulations. This must be corrected on remand.

### F. The ALJ's errors warrant a remand but not an award of benefits.

Ms. Martin argues that she is entitled to an award of benefits rather than a remand because her case has faced a years-long delay and consists of an extensive and well-developed record. Doc. No. 9, at 17-19. However, I find that the record should be more fully developed before an award of benefits is directed.

A reversal with direction to the Commissioner to award benefits is justified where there has been inordinate delay not attributable to the petitioner, the existing record contains substantial evidence supporting a finding of disability, and it is unlikely that any additional material evidence will be unearthed on remand. *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (awarding benefits when delays were not attributable to the claimant, the record was unlikely to change, and substantial evidence established that claimant suffered from a severe mental disability). An award of benefits, rather than a remand for additional investigation or explanation, should be rare. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Where, as here, conflicting evidence has not been resolved, or the ALJ has not discussed all of the relevant evidence, remand is appropriate. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001); *Leech v. Barnhart*, 111 F. App'x 652, 658-59 (3d Cir. 2004) (remand is

appropriate where the ALJ "failed to make consistent findings and conclusions, but we are not prepared to hold that [claimant] necessarily is entitled to benefits. . .").

Here, while Ms. Martin is not responsible for the inordinate delay in this nine-year-old case, there remains sufficient ambiguity in the record to warrant a remand to the Commissioner for new evidence to be added to the record and for the existing evidence to be reconsidered. For instance, most of the medical records supplied in this case from the Children's Hospital of Philadelphia relate to physical ailments, rather than N.D.M.'s ADHD and ODD. *See generally* R. 464-943, 1350-1561. More detailed medical records may clarify how N.D.M.'s impairments have changed over time. Furthermore, as Ms. Martin admits, several school records are missing from the record. *See* Doc. No. 9, at 8. While I recognize that this is due to difficulties in subpoenaing N.D.M.'s school outside of Ms. Martin's control, *see id.*, I nevertheless find that the absence of some report cards, IEP plans, and disciplinary referrals render it difficult to clearly analyze her case.

Because N.D.M. is a minor who is now an adolescent, additional school and treatment records over the last two years may be beneficial additions to the record. New records may assist the ALJ in determining the extent to which N.D.M.'s ADHD and ODD continue to limit her in the functional domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. If N.D.M.'s condition has improved or deteriorated since her last hearing, perhaps the proper outcome of this case will become clearer. Expert opinion may clarify the extent to which N.D.M.'s reading limitations, recounted in her IEPs, require a finding of "marked" or "extreme" limitation in the domain of acquiring and using information. In short, the record is "[]likely to change," on remand, unlike in

15

*Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (internal quotation and citation omitted), in which the court awarded benefits.

In remanding the case, I direct the Commissioner to give full consideration to the entirety of N.D.M.'s record in compliance with Social Security regulations and rulings and to explain the resolution of conflicting evidence. This case has lingered for nine years. The next review of N.D.M.'s case should be its last. It is unlikely to be remanded again. *See id.* (describing a wait of eight years as "remarkably long" and directing an award of benefits rather than a remand).

## CONCLUSION

Ms. Martin's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**